**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| TRACY OWENS, | : | |
| Plaintiff, | : | Case No. 3:12cv00313 |
| vs. | : | District Judge Walter Herbert Rice<br>Chief Magistrate Judge Sharon L. Ovington |
| DOLGENCORP, LLC,<br>doing business as Dollar General,<br>*et al*., | : | |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION[1]**

**I.   Introduction**

"The doctrine judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F3d 472, 476 (6th Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814 (2001)). This straightforward generality leads the parties in the present case to debate whether the case should continue.

Plaintiff Tracy Owens raises claims under the Family Medical Leave Act (FMLA) against his former employer and supervisor. Defendants contend that judicial estoppel bars

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Owens from proceeding because he did not identify these claims in his prior-filed bankruptcy case. The parties' disagreement over the application of judicial estoppel arises in Defendants' Motion for Judgment on the Pleadings (Doc. #s 12, 13), Owens's Memorandum in Opposition (Doc. # 17), and Defendants' Reply (Doc. #18). By previous court Order, Defendants' Motion has been converted to a Motion for Summary Judgment (Doc. #19), and the parties have submitted Supplemental Memoranda. (Doc. #s 20, 23).

## II.     Background

### A.     Owens's Complaint

Owens alleges the following in his Complaint. He began his most recent employment with Dollar General in December 2009 when he was hired as a store-manager candidate. Eight months later he earned a promotion to store manager and was given supervisory authority over a specific store in Trotwood, Ohio.

Nearly two years later, Owens found himself in need of FMLA leave and informed Dollar General. Dollar General approved Owens's FMLA-leave request. His "doctor certified that he could return to work on October 3, 2011." (Doc. #1, PageID at 2).

Owens repeatedly informed Dollar General about his return-to-work date and asked for instructions about where he should report to work on October 3, 2011. According to the Complaint, "Dollar General never informed [Owens] of when and where he should return to work. After October 3, 2011, [he] continued to call his district office and his former store, and ask when and where he should return to work. He received no return telephone call." *Id.*, PageID at 3.

Defendant Jason Olberding, Owens's district manager and supervisor, informed Owens on or about October 12, 2011 that his job had been filled. Defendant Olberding "wrongly insisted that Mr. Owens had made no effort to contact him or Dollar General before his return-to-work date. Mr. Olberding then curtly stated that he had no openings ...." (Doc. #1, PageID at 3). Owens never heard from Dollar General after this and was not returned to a store-manager job or any other job with Dollar General.

Owens initiated this case by filing his Complaint on September 19, 2012. His Complaint claims that Defendants retaliated against him for exercising his FMLA rights and interfered with his exercise of his FMLA rights. He alleges that Defendants willfully violated the FMLA, and he seeks, in part, compensatory damages, punitive damages, and liquidated damages.

### B. Bankruptcy Action

On December 21, 2011, about two months after Owens's employment with Dollar General ended, Owens and his wife filed a Voluntary Petition in the U.S. Bankruptcy Court, Southern District of Ohio, seeking relief from their debts under Chapter 13 of the Bankruptcy Code. Attorney Lester Thompson represented the Owenses in their bankruptcy case.

In the present case, Defendants have submitted copies of documents from the Owenses' bankruptcy case. These documents reveal the following.

In their bankruptcy case, the Owenses completed and filed a "Schedule B - Personal Property." Their Schedule B indicates that although they had certain personal property (e.g., savings and checking accounts, general household goods, etc.), they did not have "Other contingent and unliquidated claims of every nature, including tax refund, counterclaims of the

3

debtor, and rights to setoff claims." (Doc. #13, Exhibit A, at 89-90). In this manner, the Owenses did not inform the Bankruptcy Court about Tracy Owens's FMLA claims against Dollar General or Olberding. Both Tracy Owens and his wife signed their Voluntary Petition and Schedules under the penalty of perjury. *Id.*, PageID at 81,105.

The Owenses' Statement of Financial Affairs, which they also signed under the penalty of perjury, informed the Bankruptcy Court about Tracy Owens's prior 2011 year-to-date earnings from his job with Dollar General as well as his 2010 earnings with Dollar General. (Doc. #13, Exh. A, PageID at 106, 113). The Owenses also reported to the Bankruptcy Court that Tracy Owens was unemployed, *id.*, PageID at 102, and they filed a Chapter 13 Plan that states in part:

> 14. **Personal injury claims, workers compensation claims, social security claims and miscellaneous claims of the Debtor** – The debtor shall keep the Trustee informed as to any change in status of any claim for personal injury, workers compensation, social security, buyouts, severance packages, inheritance or any other claim to which Debtor may be entitled....

(Doc. #13, Exh. B, PageID at 134) (bold in original).

On February 16, 2012, the Bankruptcy Court confirmed the Owenses' Chapter 13 Plan. *Id.*, Exh. C, PageID at 139-42. At that time, the Owenses had not yet filed the instant case or informed the Bankruptcy Court about Tracy Owens's FMLA claims against Dollar General. The Owenses' bankruptcy case remains presently pending.

Defendants explain in their presently pending Motion, filed in this case on May 14, 2013, "Plaintiff has not amended his bankruptcy schedules to identify this [FMLA] claim and there is no evidence on the record of that proceeding that he has advised the Trustee or his

creditors of this claim." (Doc. #13, PageID at 70).

In response to this Court's Order converting Defendants' Motion for Judgment on the Pleadings to a Motion for Summary Judgment, Owens filed a copy of the Bankruptcy Court's Order, issued on July 17, 2013, granting the Owenses "leave to employ Adam R. Webber, Attorney at Law ... for the purpose of representing the debtor, Tracy L. Owens, in his Wrongful Termination and FMLA retaliation claim ...." (Doc. #20, PageID at 195).

C. **Affidavits**

Tracy Owens is represented in the instant case by attorney Adam R. Webber. Attorney Webber has submitted his own affidavit explaining:

2. My first contact with Tracy Owens was on July 19, 2012. I agreed to represent Mr. Owens at that time.

3. It was not until March 18, 2013 that I learned that Mr. Owens had filed for Chapter 13 bankruptcy protection. Mr. Owens immediately gave me permission to speak to Attorney Lester Thompson about his case and to coordinate efforts to remedy any actual or perceived omissions.

4. The next day, on or about March 19, 2013, I had a telephone conversation with Attorney Thompson. Just as I had been unaware of [the] bankruptcy proceeding, he indicated that he [had] been unaware of the civil case I was handling for Mr. Owens....

5. On April 18, 2013, Attorney Thompson and I agreed on a plan to remedy Mr. Owens's situation whereby Attorney Thompson would amend Mr. Owens's bankruptcy schedules, which he did so on May 30, 2013.

(Doc. #17, PageID at 179).

Tracy Owens has submitted his affidavit, stating:

3. I have been informed that Defendants – against whom I am asserting a claim in this action – have argued that my failure to disclose the existence of my FMLA

5

        retaliation claim against [sic] in my initial bankruptcy petition warrants dismissal of my claim.

4. I did not act purposefully or in bad faith during my bankruptcy relative to disclosing this claim.

5. At the time of my bankruptcy, I believed that I had been treated unfairly by Defendants, but I did not know that I had ... a claim or a cause of action against them. Nor did I understand that I had a "contingent or unliquidated claim" against Defendants.

6. As I thought about the matter more, I decided to seek legal counsel. I sought out ... Adam R. Webber to advise me of whether I had any rights in this matter. I first met with Adam on July 19, 2012. It was only then that I learned that I might have a cause of action under the Family Medical Leave Act and that I had a legal "cause of action."

7. I did not mention my bankruptcy to Attorney Webber until we discussed it as part of a response to Defendants' discovery requests at a meeting on March 18, 2013. Only then did I learn that I would need to amend my bankruptcy filing and notify the Trustee of this case. I instructed Attorney Webber to immediately contact my bankruptcy counsel, Lester Thompson, and to take whatever steps were necessary to remedy this matter.

8. I do not believe there is any inconsistency between my assertion of a personal claim now in this action and my alleged non-disclosure in the bankruptcy filing.

9. I unreservedly apologize to this Court, the Bankruptcy Court, and the involved attorneys for not comprehending the nature of the question asked of me in my bankruptcy proceeding. In no way was this a calculated effort on my part or was I motivated by bad faith or a desire to mislead the Court.

(Doc. #17, PageID at 177-78).

### III. Discussion

#### A. Defendants' Motion

In support of their reliance on judicial estoppel, Defendants point to the fact that the Owenses did not report Plaintiff's FMLA claims to the Bankruptcy Court or the Trustee when

they initiated their bankruptcy case. Defendants also point out that the Owenses did not amend their Chapter 13 Petition and did not inform their bankruptcy counsel about Plaintiff's FMLA claims, despite having numerous opportunities to do so. Defendants further argue that Plaintiff's lack of good faith in these omissions is seen in the fact that he kept each of his attorneys in the dark and did not "come clean" until Defendants' Interrogatories forced him to disclose the existence of the Owenses' bankruptcy case.

Plaintiff contends that application of judicial estoppel is unwarranted because (1) the Owenses' bankruptcy Petition was not incomplete or misleading when it was filed; (2) Tracy Owens took immediate steps to remedy the inconsistency, "as soon as the discrepancy was discovered – before Dollar General raised this defense ...."; and "(3) any error was the result of inadvertence and mistake." (Doc. #17, PageID at 165).

### B. Motions for Summary Judgment

A party is entitled to summary judgment when there is no genuine dispute over any material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Barker v. Goodrich*, 649 F.3d 428, 432 (6th Cir. 2011).

To resolve whether a genuine issue of material fact exists, the Court draws all reasonable inferences in the light most favorable to the non-moving party. *Richland Bookmart, Inc. v. Knox County, Tenn.*, 555 F.3d 512, 520 (6th Cir. 2009)(citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348 (1986)). With these reasonable inferences in the forefront, "[t]he central issue is 'whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Jones v. Potter*, 488 F.3d 397, 402-03 (6th Cir. 2007) (quoting, in part, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) and citing *Matsushita Elec.*, 475 U.S. at 587). "Accordingly, '[e]ntry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Whitfield v. Tennessee*, 639 F.3d 253, 258 (6th Cir. 2011) (citations omitted).

### C. Judicial Estoppel

Under the doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire*, 532 U.S. at 749, 121 S. Ct. at 1814 (citations omitted). Judicial estoppel "preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy,* 283 F.3d 761, 776 (6th Cir. 2002). "Because the rule is intended to prevent 'improper use of judicial machinery,' judicial estoppel 'is an equitable doctrine invoked by a court at its discretion[.]'" *New Hampshire*, 532 U.S. at 750, 121 S. Ct. at 1815 (citations omitted).

If a party fails to disclose a cause of action during a Chapter 13 bankruptcy proceeding yet later raises it in a separate civil action, judicial estoppel can preclude the party from raising it in the separate civil action. *See, e.g., Lewis v. Weyerhaeuser Co.*, 141 Fed. App'x 420, 421

8

(6th Cir. 2005); *Reynolds v. Commissioner of Internal Revenue,* 861 F.2d 469, 473-74 (6th Cir. 1988). To determine whether judicial estoppel applies, three factors are considered:

1. Whether "a party's later position [is] clearly inconsistent with its earlier position."

2. Whether the party previously persuaded a court to accept a position such that later "judicial acceptance of an inconsistent position ... would create the perception that either the first or the second court was misled."

3. Whether "[t]he party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*See Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 452-53 (6th Cir. 2005) (quoting *New Hampshire*, 532 U.S. at 750-51, 121 S.Ct. at 1815)(other citations omitted). In addition, application of "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *Browning*, 283 F.3d at 776 (citations omitted); *see also White*, 617 F.3d at 483-84

Under the first consideration, Plaintiff asserts a position in the instant case – *i.e.*, that Defendants violated his rights under the FMLA – clearly inconsistent with his position made under oath in the bankruptcy court – *i.e.*, that he had no "contingent or unliquidated claims." *See Wyndham Vacation*, 617 F.3d at 478-79. Plaintiff argues that it is unreasonable to expect a lay person, like himself, to read the phrase "[o]ther contingent or unliquidated claims of every nature" in his bankruptcy Schedule B and know that he might have a legal cause of action, especially one that he never sought legal advice about. Plaintiff emphasizes that he has no legal training or experience, and he was therefore unable to determine whether he had a cause of

9

action against Dollar General. He further argues that raising his FMLA claims now is not "clearly inconsistent" with his position in the bankruptcy court because he did not seek legal advice about his employment with Dollar General until nearly seven months after he filed for bankruptcy "and was not made aware that he had a viable claim against Dollar General until that time." (Doc. #17, PageID at 169). Plaintiff's contentions miss the point of the first factor by focusing on Plaintiff's lack of knowledge at the time of his bankruptcy filing. The first factor's proper focus is on the facial consistency or inconsistency of his positions in this case versus the bankruptcy proceedings. "[P]ursuing a cause of action that was not disclosed in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel." *Lewis*, 141 Fed. App'x at 425 (citing *Eubanks*, 385 F.3d at 898; *Browning*, 283 F.3d at 775); *Stephenson v. Malloy*, 700 F.3d 265, 274 (6th Cir. 2012). Plaintiff simply aims his arguments in the wrong direction. His arguments, as Defendants correctly recognize, are properly considered when examining whether mistake or inadvertence operates to nullify the application of judicial estoppel to this case. *See, e.g.*, *Eubanks*, 385 F.3d at 898-99.

  As to the second judicial-estoppel consideration, the Bankruptcy Court's acceptance of the Owenses' Chapter 13 Plan effectively credited their representation that they did not have any contingent or unliquidated claims at that time. The second consideration, therefore, seems at first glance to have been implicitly satisfied at the time the Bankruptcy Court confirmed the Owenses' Plan (on February 16, 2012). *See Lewis*, 141 Fed. App'x at 425. But this is not the whole story in light of paragraph 14 of the Owenses' Chapter 13 Plan and because Plaintiff amended his bankruptcy pleadings as soon as he learned from Attorney Webber that he needed

10

to do so. As a result of the latter action, the existence of the present lawsuit has been properly recorded and noticed in the Owenses' bankruptcy case. As to paragraph 14 of the Owenses' Chapter 13 Plan, it deals with the proceeds from any outside litigation before such litigation is settled or resolved and before any resulting monetary gains to Plaintiff are disbursed:

> 14. **Personal injury claims, workers compensation claims, social security claims and miscellaneous claims of the Debtor** – The Debtor shall keep the Trustee informed as to any change in status of any claim for personal injury, workers compensation, social security, buyouts, severance packages, inheritance or any other claim to which Debtor may be entitled. Before the claim can be settled and distributed, the Debtor must comply with all requirements for filing applications and motions for settlement with the Court as required by the Bankruptcy Code and Local Rules. These funds shall be treated as additional plan payments to increase the dividend for unsecured creditors or as the Court so otherwise orders. The Debtor's case will not [be] complete until the claim has been settled and shall remain open for administration purposes until the claim has been paid into the plan or the Court so otherwise orders.

(Doc. #13, Exh. B, PageID at 134) (bold in original). Paragraph 14's plain meaning reveals that the Owenses' Chapter 13 Plan anticipates claims – such as Plaintiff's FMLA claims – may be presented and resolved in the Owenses' bankruptcy proceedings after the Bankruptcy Court approved their Chapter 13 Plan. *Id.*, Exh. C. Consequently, by accepting the Owenses' Chapter 13 Plan, the Bankruptcy Court made no specific ruling on Plaintiff's FMLA claim and instead created a procedural avenue by which it could later take account of additional legal causes of action and resulting monetary gain to Plaintiff (if any) and, in turn, to potentially disburse to such monetary gain to the Owenses' unsecured creditors. By omitting his FMLA claim, then later correcting the omission in accordance with the specific procedure set forth in paragraph 14 of the Bankruptcy Plan, Plaintiff did not "create the perception that either...," *Pennycuff*, 404

11

F.3d at 452-53, the Bankruptcy Court or this Court was misled. Consequently, the second judicial-estoppel consideration does not favor imposing judicial estoppel upon Plaintiff.

Even if the first and second judicial-estoppel considerations are satisfied, there is more going on here than such satisfaction suggests. Plaintiff's and attorney Webber's affidavits create a genuine issue of material fact concerning whether Plaintiff's omission of his FMLA claim from the bankruptcy proceedings was due to "mistake or inadvertence." *Wyndham Vacation*, 617 F.3d at 478; *see Stephenson*, 700 F.3d at 274 (judicial-estoppel case finding that "the affidavits and correspondence clearly establish an issue of material fact with respect to whether [the bankruptcy petitioner's] omission was in bad faith.").

Three considerations apply in determining whether the omission of Plaintiff's FMLA claims from the bankruptcy proceeding was due to mistake or inadvertence: (1) whether he lacked knowledge of the factual basis supporting his FMLA claims; (2) whether he had a motive for concealment; and (3) whether "the evidence indicates an absence of bad faith." *White*, 617 F.3d at 478.

Owens certainly knew the facts underlying his FMLA claims at the time the Owenses filed their Chapter 13 Petition and Schedules. But his lack of understanding about the possible legal ramifications of those facts – specifically, under the FMLA – tends to show that he knew the facts separate and apart from any significant legal knowledge he might have possessed about his present FMLA claims. Additionally, as the non-moving party, Owens's affidavit must be construed in his favor. *Jones*, 488 F.3d at 402-03. Owens states that he did not know about his FMLA claim when the Owenses filed their Bankruptcy case, and that he did not learn he

12

might have an FMLA claim until he met with attorney Webber on July 19, 2012. (Doc. #17, PageID at 177-78). When credited, Owens's affidavit is sufficient to create a genuine issue of material fact regarding his lack of knowledge about his FMLA claims when the Owenses filed for bankruptcy. The other circumstances existing in the case based on the present record do not negate this genuine issue of fact. The seven-month gap between the date the Owenses filed their Bankruptcy Petition and the date Tracy Owens first met with attorney Webber must be viewed in Owens's favor at this stage of the case. Doing so leads to the reasonable inference that Owens did not know about his FMLA claim until he first met with attorney Webber (in July 2012). A person who knows he has a legal claim would not likely wait for seven months to obtain legal advice about it, especially when facing the dire financial position in which Owens found himself in December 2011. Without other contrary evidence – which the record presently lacks – Owens's affidavit creates a genuine issue of fact over whether he lacked knowledge of his FMLA claims at the time the Owenses filed their Bankruptcy Petition. *See Wyndham Vacation*, 617 F.3d at 475-76; *see also Lewis*, 141 Fed. App'x at 423 ("In application of th[e] summary judgment standard, the Court must view all materials supplied, including the pleadings, in the light most favorable to the non-moving party." (citing *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986)).

      Defendants contend otherwise, arguing that cases applying judicial estoppel almost always involve legal layman and courts reject ignorance of the law as an excuse. Defendants emphasize that this is especially true where Plaintiff was represented by counsel at the start of his bankruptcy case. Yet, the cases upon which Defendants rely are factually distinguishable.

13

Although judicial estoppel applied in *Wallace v. Johnston Coca-Cola Bottling Grp., Inc.*, 1:06CV875, 2007 WL 927929 (S.D. Ohio Mar. 26, 2007)(Beckwith, Chief D.J.), the District Court declined to find inadvertence because the plaintiff had actually commenced legal proceedings involving the claim before he filed his bankruptcy petition, thus revealing his pre-bankruptcy knowledge of his claims. *Wallace*, 1:06CV875, 2007 WL 927929 at *2. In contrast, as discussed above, Tracy Owens is entitled to the reasonable inference that he did not know about his FMLA claims until he first met with attorney Webber seven months after the Owenses filed their Bankruptcy Petition. Similar factual differences exist between the instant case and *Lott v. Sally Beauty Co., Inc.*, 3:00CV1216J20TJC, 2002 WL 533651 at *4 (M.D. Fla. Mar. 5, 2002). In *Lott*, the plaintiff evidenced her knowledge of her discrimination claim by filing an EEOC charge one month before initiating her bankruptcy case in which she omitted her potential discrimination claim. In *Chandler v. Samford Univer.*, 35 F. Supp.2d 861, 864 (N.D. Ala. 1999), the plaintiff filed an EEOC charge the day after she filed her Chapter 7 bankruptcy case. Unlike the circumstances showing the plaintiffs' knowledge in *Lott* and *Chandler*, Plaintiff did not pursue an FMLA claim against Defendants before or near (e.g., one day after) the date he filed his Bankruptcy Petition. Thus, unlike the plaintiffs in *Lott* and *Chandler*, the timing of Plaintiff's act of filing the instant case tends to show that Owens lacked knowledge of his FMLA claim.

     As to the second mistake-or-inadvertence consideration, Defendants are correct to the extent they assert that those filing for Chapter 13 have a motive to conceal their legal claims. *See Lewis*, 141 Fed. App'x 420, 426 (6th Cir. 2005) ("It is always in a Chapter 13 petitioner's

interest to minimize income and assets." (citations omitted)). But Plaintiff could not walk in lockstep with this motive as to his FMLA claims unless he actually knew about his potential FMLA claims when the Owenses filed their Bankruptcy Petition. Given the reasonable inference arising from the present record that Owens lacked such knowledge, he would not have known, or had a specific motive, to conceal his FMLA claims.

    Defendants point out that Owens did not tell attorney Webber about the Owenses' bankruptcy case when they first met in July 2012 and that he waited instead until meeting with attorney Webber in March 2013 to prepare discovery responses. According to Defendants, these facts show Owens's bad faith or concealment. But these facts cut two ways. On the one hand, these facts might show Owens's concealment or bad faith if he knew about his FMLA claims near the time he filed his bankruptcy pleading and if he remained silent about his claims until he learned that his omission must be revealed in response to Defendants' Interrogatories. Yet, on the other hand, these facts cut equally in Owenses' favor because they are consistent with his assertions that he did not know about his FMLA claims until he first met with attorney Webber in July 2012 and that he did not know that he needed to amend his bankruptcy pleadings until he met with attorney Webber in March 2013. Indeed, without contrary evidence, which the record presently lacks, Owens's silence regarding his need to amend his bankruptcy petition throughout this period is consistent with his asserted lack of knowledge about his FMLA claims when the Owenses filed their bankruptcy case. Because Owens's and attorney Webber's affidavits are construed in Owens's favor at this stage of the case, Owens is entitled to the reasonable inference that his silence does not show bad faith. *See Richland*

15

*Bookmart, Inc. v. Knox County, Tenn.*, 555 F.3d 512, 520 (6th Cir. 2009) ("In determining whether a genuine issue of material fact exists, we draw all reasonable inferences in the light most favorable to the non-moving party." (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348 (1986)).

Furthermore, at the start of the Owenses' bankruptcy case, Owens informed the bankruptcy court that he was unemployed and that he had been previously employed by Dollar General until one month earlier, November 2011. He also provided the bankruptcy court with the specific amount of his earnings with Dollar General. If Owens was trying to conceal his FMLA claims from his bankruptcy pleadings, he might well have kept this information hidden from the bankruptcy court. Perhaps this is why the Bankruptcy Court did not dismiss the Owenses' case by finding Owens acted in bad faith as to his FMLA claim. Regardless, the Bankruptcy Court has recently granted the Owenses leave to employ attorney Webber to prosecute the instant case. This is consistent with the procedure set forth in Paragraph 14 of the Owenses' Chapter 13 Plan (discussed above). And Owens correctly argues that given the Bankruptcy Court's Order effectively permitting attorney Webber to proceed in the instant case, further litigation in the instant case without interference from judicial estoppel is in harmony with the Bankruptcy Court's procedural stance. Defend ants respond that the Bankruptcy Court accepted Owens's representation that he had no claim when it approved the Owenses' Chapter 13 Plan. Defendants argue, "Again, if a debtor could escape the consequences of hiding a claim from his creditors by amending his schedules after being caught, there would be no incentive to ever list a claim." (Doc. #23, PageID at 205). This

16

argument is again based on the premise that Owens knew about his FMLA claims when the Owenses filed their bankruptcy case. But the record does not fully support the accuracy of this premise; it instead contains a genuine issue of fact about Owens's lack of knowledge about his FMLA claims when the Owenses filed their Bankruptcy Petition.

Lastly, Owens recently filed a Motion For Substitution Of Bankruptcy Trustee As Real Party In Interest (Doc. #21). This Motion is not yet ripe for decision and, therefore, it is impossible to reach a final conclusion on its merits. In the event the Trustee is added as a real party in interest to this case, it appears that judicial estoppel might not apply to the Trustee as long as he or she did not engage in wrongdoing. In that as-yet hypothetical circumstance, a plaintiff's "failure to disclose his claim [in the Bankruptcy Court] does not bar the trustee from pursuing them." *Stephenson v. Malloy*, 700 F.3d 265, 272 (6th Cir. 2012). If this rule applies in the present case, then an Order granting Defendants' present Motion, which has been converted to a Motion for Summary Judgment, would not prevent the Trustee from pursuing Owens's FMLA claims against Defendants. *See id*.

Accordingly, for all the above reasons, application of judicial estoppel is unwarranted based on the present record in this case.

## IT IS THEREFORE RECOMMENDED THAT:

Defendants' Motion for Judgment on the Pleadings (Doc. #12), which has been converted to a Motion for Summary Judgment be DENIED.

September 12, 2013          s/Sharon L. Ovington
                                                         Sharon L. Ovington
                                    Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).